**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| TYRONE A. WRIGHT, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No.: 5:25-cv-02808-JMG |
| | : | |
| CITY OF ALLENTOWN, *et al.* | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                              **July 1, 2026**

## I.    OVERVIEW

Plaintiff Tyrone A. Wright, a Black 67-year-old man, brings Section 1983 and state law claims against Defendants, City of Allentown ("City") and Mandy Tolino (collectively, "Defendants"), for Defendants' decision to hire a younger, White applicant for the City's Recreation Manager position. Following the Court's April 21, 2026, Memorandum and Order granting Defendants' Motion to Dismiss the Amended Complaint without prejudice and with leave to amend, Plaintiff filed a Second Amended Complaint ("SAC"). Defendants subsequently moved to dismiss the SAC. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**.

## II.    BACKGROUND[1]

Plaintiff works in the sports and recreation industry. *See* 2d Am. Compl. ("SAC") at 2 (ECF No. 20). He has a master's degree in sports management and had a "successful career in the recreation field and management/leadership field." *See id.* In 1995, Plaintiff began working for the

---

[1] The Court accepts Plaintiff's factual allegations as true, as we must at this early stage.

City[2] as a swimming pool manager and basketball referee. *See id.* ¶¶ 8-9. He held the manager position for four years and the referee position until 2023. *Id.*

In March 2024, after seeing the City's job posting for "Recreation Manager," Plaintiff submitted his cover letter and supporting documents. *See id.* ¶¶ 10-13. He later confirmed with human resources that the City received his application. *See id.* ¶¶ 14-15. On or about May 10, 2024, Plaintiff called human resources again to ask whether the position was filled. *See id.* ¶ 17. Plaintiff learned that Chris Hendricks, a younger White male and the son of an Allentown City Council member, had been hired for the position. *See id.* ¶ 17.

On or about May 29, 2024, Plaintiff began the process of filing a complaint with the Pennsylvania Human Relations Commission ("PHRC"). *See id.* ¶ 19. While Plaintiff waited for the City to respond, he learned that another Black recreation department staff member had applied for the Recreation Manager position and did not receive an interview. *See id.* ¶¶ 26-27. Plaintiff received his Right to Sue letter from the PHRC on February 27, 2025, and his Right to Sue letter from the EEOC on March 21, 2025. *See id.* ¶¶ 33-34.

Plaintiff alleges that he is the superior candidate to the candidate who was hired. *See id.* ¶ 35. He contends that he has a higher level of education than the candidate who was hired, as well as more management experience. *See id.* ¶¶ 36-37. Plaintiff further alleges that the City of Allentown has maintained a custom of racial discrimination within its local government. *See id.* at 8. To support this allegation, Plaintiff refers to several lawsuits filed by City employees, investigations into alleged discriminatory conduct, and a July 2023 letter from the Allentown NAACP addressing concerns regarding racism within the City government. *See id.*

---

[2] Plaintiff's referee work was performed as an independent contractor. *See* Am. Compl. ¶ 9.

Plaintiff brings this action against Defendants, alleging racial discrimination under 42 U.S.C. § 1981 (brought under 42 U.S.C. § 1983) and the Pennsylvania Human Relations Act ("PHRA"). *See id.* at 9-10. He also brings an age discrimination claim under the PHRA against the City only. *See id.* at 11. Defendants move to dismiss the SAC, arguing that it fails to state claims upon which relief can be granted. *See* Defs.' Br. in Supp. of Mot. to Dismiss 2d Am. Compl. ("Defs.' Mot. to Dismiss") at 4. (ECF No. 21).

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

## IV.    ANALYSIS

### a.  Section 1981 Claims Brought Under Section 1983

Section 1981 provides that all persons within the United States "have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). To state a claim

under Section 1981, Plaintiff must "prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Af. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *see also Gross v. R.T. Reynolds, Inc.*, 487 F. App'x 711, 716-17 (3d Cir. 2012) (explaining plaintiff failed to explain how defendant "treated non-minority contractors any differently than it treated him, or how delays in the construction project were motivated by or related to [plaintiff's] race"). That requires showing that: (1) Plaintiff "belongs to a racial minority; (2) an intent to discriminate on the basis of race by [Defendants]; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Summers v. Child.'s Hosp. of Phila.*, No. 21-3479, 2021 WL 5789057, at *2 (E.D. Pa. Dec. 7, 2021) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)). However, Section 1981 "does not support a cause of action for every instance of racial discrimination or hostility." *Pinckney v. Pep Boys - Manny Moe & Jack*, No. 19-3775, 2021 WL 3578983, at *2 (3d Cir. Aug. 13, 2021) (citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479 (2006); *Hammond v. Kmart Corp.*, 733 F.3d 360, 364 (1st Cir. 2013)). Only intentional discrimination will suffice. *Pryor*, 288 F.3d at 562; *see also Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391, (1982) (explaining only purposeful discrimination will violate Section 1981).

When the defendant is a state actor, as Defendants are here, the proper vehicle for a Section 1981 claim is Section 1983. *See Massey v. Borough of Bergenfield*, 169 F.4th 188, 202 (3d Cir. 2026) ("A *Monell* theory against a municipality 'arising under § 1981' is a § 1983 claim relying on a *Monell* theory predicated on a violation of one of the rights established in § 1981." (quoting *McGovern v. City of Phila.*, 554 F.3d 114, 116, 121 (3d Cir. 2009)). "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983)). Because racial discrimination in employment contracts violates Section 1981, Plaintiff can bring

4

his federal racial discrimination claims against Defendants under Section 1983. *See Young v. Se. Pa. Transp. Auth.*, No. CV 21-4375, 2023 WL 3204019, at \*14 (E.D. Pa. May 2, 2023) (explaining Section 1981 "prohibits employment discrimination on the basis of race" (quoting *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 180 (3d Cir. 2020))).

### 1. Claim Against City of Allentown

Plaintiff brings this Section 1981 claim via Section 1983 against the City on the basis of municipal liability. For the City to be held liable, the City's Section 1981 violation must be "the result of municipal custom, policy, or practice." *See Araoye v. City of Phila.*, No. CV 19-719, 2022 WL 16553374, at \*4 (E.D. Pa. Oct. 31, 2022); *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 666 (E.D. Pa. 2020) (citing *Daniels v. Sch. Dist. of Phila.*, 982 F. Supp. 2d 462, 478 (E.D. Pa. 2013)); *see also Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)) (explaining that municipalities cannot be held liable for Section 1983 violations under a *respondeat superior* theory). Plaintiff must establish that "the City implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated, or acted pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision-making channels." *Araoye*, 2022 WL 16553374, at \*4 (citation modified) (quoting *McGovern*, 554 F.3d at 121). The policymaker must have also "authorized or acquiesced in the policy or custom." *See Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 761 (3d Cir. 2019); *Araoye*, 2022 WL 16553374, at \*4 (citation modified).

"Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict," and custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Est. of Roman*

*v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citations omitted); *see also Araoye*, 2022 WL 16553374, at *4 (applying to Section 1981 violation). Additionally, Plaintiff must demonstrate the "'affirmative link' between the policy or custom" and the Section 1981 violation. *See Est. of Roman*, 914 F.3d at 798 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)); *Araoye*, 2022 WL 16553374, at *4 ("The plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." (citation modified) (quoting *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)).

Defendants argue that Plaintiff still fails to establish municipal liability under *Monell* because, although the SAC now alleges a discriminatory custom within the City of Allentown, it does not plead facts demonstrating the existence of such a custom. Defs.' Mot. to Dismiss at 4. The Court agrees. A custom must be a longstanding and widespread practice that, although unwritten, is so well established that it effectively functions as official policy; isolated incidents or general allegations of misconduct are insufficient. *See Roman*, 914 F.3d at 798; *Harden v. City of Phila.*, No. Civ.A. 05-120, 2006 WL 47386, at *4 (E.D. Pa. Jan. 9, 2006) (citing *Monell*, 436 U.S. at 691).

Here, Plaintiff alleges that the City has faced allegations of discrimination since 2023, including lawsuits, investigations, and a public letter criticizing the City's practices. *See* SAC at 8 (ECF No. 20). These allegations do not plausibly establish a longstanding and widespread custom of discrimination. Although Plaintiff references "multiple" lawsuits, he does not describe those lawsuits with any specificity. Plaintiff does not allege what conduct they involved, whether they concerned discriminatory hiring practices similar to those alleged here, or whether they resulted in findings of liability, admissions of wrongdoing, or any other determination supporting the existence of a discriminatory municipal custom. Likewise, Plaintiff does not identify a pattern of discriminatory hiring decisions, provide specific examples demonstrating this, or allege any facts

6

to show that such conduct was so permanent and pervasive as to constitute a municipal policy. Instead, Plaintiff relies on generalized allegations of misconduct but fails to allege facts demonstrating that the City maintained a widespread discriminatory practice. Such conclusory allegations are insufficient to state a plausible *Monell* claim. Defendants' Motion to Dismiss Count I of Plaintiff's SAC is therefore **GRANTED**.

### 2. Claim Against Mandy Tolino

A state actor cannot be held liable in an individual capacity under Section 1983 based on his or her supervisory status alone. *See King v. Borough of New Holland*, No. CV 24-6628, 2026 WL 147547, at *5 (E.D. Pa. Jan. 20, 2026) (citing *Iqbal*, 556 U.S. at 676); *Smith v. Loysville Youth Dev. Ctr.*, No. CV 19-3770, 2020 WL 5439547, at *3 (E.D. Pa. Sept. 10, 2020)); *Summers v. Comm'r Charles Ramsey*, No. CV 13-6644, 2016 WL 7188616, at *8 (E.D. Pa. Dec. 12, 2016) (explaining *respondeat superior* does not apply to Section 1983 claims). The individual must have been personally involved in the alleged wrongs. *Hatfield v. Berube*, 714 F. App'x 99, 102 (3d Cir. 2017) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *Loysville Youth Dev. Ctr.*, 2020 WL 5439547, at *4.

Plaintiff has not shown that Tolino "established and maintained a policy, practice or custom which directly caused the constitutional harm" or "participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *See Loysville Youth Dev. Ctr.*, 2020 WL 5439547, at *4 (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)). Although Plaintiff now alleges that Tolino was the final decisionmaker, favored a White candidate, deviated from the normal hiring process, and maintained a history of selecting "only one type of person" (white applicants), these allegations are conclusory and unsupported by facts. *See* SAC ¶ 70-77. Plaintiff pleads no facts demonstrating that Tolino altered the selection process, personally engaged in

intentional discrimination, or maintained a discriminatory policy or practice. Nor does he allege facts showing that Tolino directed, participated in, or knowingly acquiesced in any constitutional violation. Accordingly, Defendants' Motion to Dismiss Count IV of Plaintiff's SAC is **GRANTED**.

### 3. Dismissed with Prejudice

The Third Circuit recognizes that the Court must offer amendment in civil rights cases "when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017). The Court concludes that further attempts to amend would be futile, as he has already been given a second chance to amend. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"). Plaintiff's Section 1981 claims brought under Section 1983 are therefore **DISMISSED with prejudice**.

### b. Claims Brought Under PHRA

Because the Court is dismissing Plaintiff's federal claims, the Court declines to exercise jurisdiction over Plaintiff's supplemental claims. *See* 28 U.S.C. § 1367(c)(3).

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 21) is **GRANTED**. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

8